UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | Criminal No. H:09cr609 |
| v. | § | |
| | § | The Hon. Keith P. Ellison |
| ADIL R. CASSIM, A.K.A. | § | |
| "Kali" and "The_Rulers_Back", AND | § | Trial: March 15, 2009 |
| MATTHEW D. CHOW, A.K.A. "RL," | § | |
| | § | |
| Defendants. | § | |

## THE UNITED STATES' TRIAL MEMORANDUM

The United States of America, by and through its attorneys, Jose Angel Moreno, United

States Attorney, S. Mark McIntyre, Assistant United States Attorney for the Southern District of

Texas, Tyler G. Newby and Tara Swaminatha, Trial Attorneys, U.S. Department of Justice,

Computer Crime and Intellectual Property Section and Jay V. Prabhu, Assistant United States

Attorney for the Eastern District of Virginia, hereby submits the following trial memorandum in

the captioned case.

Respectfully submitted,

JOSÉ ANGEL MORENO
United States Attorney

/S/ Tyler G. Newby
Tyler G. Newby
U.S. Department of Justice
Computer Crime and Intellectual Property Section
1301 New York Avenue, Suite 600
Washington, DC 20009

Tara Swaminatha
Trial Attorney
U.S. Department of Justice
Computer Crime and Intellectual Property Section

Jay V. Prabhu
Assistant United States Attorney
Eastern District of Virginia

S. Mark McIntyre
Assistant United States Attorney
(713)-567-9572

## Table of Contents

I.    PROCEDURAL STATUS.................................................................................1

II.   APPLICABLE STATUTE ..............................................................................1

III.  STATEMENT OF FACTS .............................................................................2

IV.   PERTINENT LAW.........................................................................................5

      A.    CONSPIRACY ....................................................................................5

            1.    Elements...................................................................................5

            2.    Willfulness ...............................................................................6

            3.    Private Financial Gain...........................................................6

            4.    Proof of Copyright Infringement Not Required ...................7

V.    EVIDENTIARY ISSUES ...............................................................................8

      A.    CO-CONSPIRATORS' STATEMENTS...........................................10

      B.    DEFENDANTS' PRIOR STATEMENTS AGAINST INTEREST ...............11

            1.    The Government May Elicit Both Defendants' Prior
                  Statements...............................................................................11

            2.    Defendant Cassim's *Bruton* Objection..............................11

      C.    INEXTRICABLY INTERTWINED EVIDENCE ...........................12

      D.    EVIDENCE OF DEFENDANT CASSIM'S OTHER ACTS............13

      E.    USE OF COPYRIGHT REGISTRATIONS .....................................13

      F.    REFERENCES TO CIVIL REMEDIES...........................................15

      G.    AUTHENTICATION OF DOCUMENTS........................................15

VI.   CONCLUSION ............................................................................................16

# Table of Authorities

**Cases**

*Bourjaily v. United States*,
    483 U.S. 171 (1987) ..................................................................................8

*Garrett v. United States*,
    471 U.S. 773 (1985) ..................................................................................7

*Huddleston v. United States*,
    485 U.S. 681 (1988)..................................................................................13

*Summers v. Dretke*,
    431 F.3d 861 (5th Cir. 2005) ..................................................................10

*United States v. Bayer*,
    331 U.S. 532 (1947) ..................................................................................7

*United States v. Cornett*,
    195 F.3d 776 (5th Cir. 1999) ....................................................................9

*United States v Crawford*,
    541 U.S. 36 (2004) ..............................................................................8, 10

*United States v. Cross*,
    816 F.2d 297 (7th Cir. 1987) ....................................................................6

*United States v. DeVaugn*,
    579 F.2d 225 (2d Cir. 1978) .....................................................................8

*United States v. Elashyi*,
    554 F.3d 480 (5th Cir. 2008) .................................................................8, 9

*United States v. Floyd*,
    343 F.3d 363 (5th Cir. 2003) ....................................................................5

*United States v. Leal*,
    74 F.3d 600 (5th Cir. 1996) ....................................................................12

*United States v. Payne*,
    437 F.3d 540 (6th Cir. 2006) ..................................................................10

*United States v. Phillips*,
219 F.3d 505 (5th Cir. 2000) ...................................................10

*United States v. Reyes*,
798 F.3d 380 (10th Cir. 1986) ..................................................9

*United States v. Taxe*,
540 F.2d 961 (9th Cir. 1976) ...................................................13

*United States v. Townley*,
472 F.3d 1267 (10th Cir. 2007) ................................................9

*United States v. Tucker*,
376 F.2d 236 (4th Cir. 2004) ....................................................7

*United States v. Watkins*,
591 F.3d 780 (5th Cir. 2009) ...................................................12

## **Statutes and Rules**

Fed. R. Crim. P. 21 ....................................................................1

Fed. R. Evid. 801(d)(2)(E) ........................................................8

Fed. R. Evid. 801(d)(2)(A) ........................................................8

Fed. R. Evid. 902(1) ................................................................13

17 U.S.C. § 101 ........................................................................7

17 U.S.C. § 102 ......................................................................14

18 U.S.C. § 371 ............................................................. *passim*

17 U.S.C. § 506(a) ........................................................ *passim*

18 U.S.C. § 2319 .......................................................... *passim*

Pub. L. No. 110-403, § 101, 122 Stat. 4257 (2008).....................14

# I.      PROCEDURAL STATUS

This matter was transferred to this Court on October 28, 2009 from the U.S. District Court for the Eastern District of Virginia on the defendants' motions to transfer, pursuant to Federal Rule of Criminal Procedure 21.  Following transfer, a federal grand jury in the Southern District of Texas returned a one count Superseding Indictment on November 19, 2010.

Trial in this matter is set for March 15, 2010, at 9:00 a.m. before the Honorable Keith P. Ellison, United States District Judge.  A pre-trial conference is scheduled for March 11, 2010 at 10:30 a.m.  Both defendants are on bond.  The government estimates that its case-in-chief will last approximately three days.  Trial by jury has not been waived.

# II.      APPLICABLE STATUTE

The Indictment charges the defendants with a single count of conspiracy to commit criminal copyright infringement in violation of 18 U.S.C. § 371.  The criminal copyright infringement statutes the defendants are accused of conspiring to violate are 17 U.S.C. § 506(a) and 18 U.S.C. § 2319.  Title 17, United States Code, § 506(a) provides:

> **(a) Criminal Infringement** - (1) In general–Any person who willfully infringes a copyright shall be punished as provided under section 2319 of title 18, if the infringement was committed–
>> (A) for purposes of commercial advantage or private financial gain;
>> (B) by the reproduction or distribution, including by electronic means, during any 180-day period, of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000; or
>> (C) by the distribution of a work being prepared for commercial distribution, by making it available on a computer network accessible to members of the public, if such person knew or should have known that the work was intended for commercial distribution.

Title 18, United States Code, § 2319(b), (c) and (d) set forth the penalties associated with substantive violations of 17 U.S.C. § 506(a):

(b)  Any person who commits an offense under section 506(a)(1)(A) of title 17

　　(1) shall be imprisoned not more than 5 years, or fined in the amount set forth in this title, or both, if the offense consists of the reproduction or distribution, including by electronic means, during any 180-day period, of at least 10 copies or phonorecords, of 1 or more copyrighted works, which have a total retail value of more than $2,500 ...

(c) Any person who commits an offense under section 506(a)(1)(B) of title 17, United States Code –

　　(1) shall be imprisoned not more than 3 years, or fined in the amount set forth in this title, or both, if the offense consists of the reproduction or distribution of 10 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of $2,500 or more;

　　　　　　　　　　　　　...

　　(3) shall be imprisoned not more than 1 year, or fined in the amount set forth in this title, or both, if the offense consists of the reproduction or distribution of 1 or more copies or phonorecords of 1 or more copyrighted works, which have a total retail value of more than $1,000.

(d) Any person who commits an offense under section 506(a)(1)(C) of title 17, United States Code –

　　(1) shall be imprisoned not more than 3 years, fined under this title, or both;

　　(2) shall be imprisoned not more than 5 years, fined under this title, or both, if the offense was committed for purposes of commercial advantage or private financial gain ...

## III.　　STATEMENT OF FACTS

The government expects that the evidence at trial will establish the following facts, among others, beyond a reasonable doubt.

From approximately 1997 to January 2007, a group of individuals conspired to reproduce and distribute over the Internet thousands of infringing copies of popular copyrighted musical recordings, often well before the music was released for legitimate retail sale.  The group called itself Rabid Neurosis, or RNS, and became the most notorious Internet "release" group of the last decade, claiming responsibility for the initial Internet distribution of approximately 18,000 copyrighted sound recordings.  Those sound recordings were then copied and distributed

thousands of times over, a fact of which RNS' members were well aware.  Both defendants played important different roles in the conspiracy throughout much of its existence.

During the relevant time period, RNS was one of several organized Internet release groups engaged in copyright infringement on a massive scale.  Release groups typically specialized in illegally reproducing and distributing a particular type of copyrighted work: some groups specialized in software, others in video games or movies, and still others in music.  The members of RNS focused on being the first to copy and distribute popular music CDs in MP3 format before rival groups, and often well in advance of the CD's commercial availability.  The community of underground groups that reproduced and distributed infringing copies of all manners of copyrighted content was known as the "warez scene."

RNS was well-organized and exclusive.  Members performed different roles, depending on their technical skills, financial resources, reputation within the warez scene, and access to music and pre-retail music.  The evidence will show that defendant Adil Cassim, known within RNS by the online aliases "Kali", "The_Rulers_Back" and others, held a leadership role from 2001 to late January 2007.  As a leader within the group, Cassim made decisions on which albums the group would reproduce and distribute illegally over the Internet, and when they would do so.  It was Cassim who ultimately directed the shutdown of the group in January 2007 out of fear of impending law enforcement action.

In addition to the group's leadership, the members who obtained copyrighted music, reproduced and distributed it illegally in the MP3 format under RNS' name were known as "rippers."  RNS' rippers consisted of radio DJs, individuals who bought CDs from stores that stocked new releases before their official release dates, employees at a CD manufacturing plant,

and individuals who obtained CDs by other methods. Rippers would use "ripping" software to copy and extract the sound recordings from the CDs and compress them into MP3 format. Rippers would then "tag" each song on the reproduced album with the "RNS" moniker, so that others would know that RNS reproduced and distributed the CD. Members would also create an "nfo" file, which was a text file accompanying each ripped file. The nfo file would provide a track listing, notes about the album and would identify RNS as the source of the copy. Once a ripper had reproduced a copyrighted album, he would upload it to an RNS server on the Internet from which the album would be further distributed around the world to affiliated servers.

RNS became one of the most notorious release groups because it was able to obtain, copy and distribute popular CDs well in advance of their commercial release date. It was able to do this in large part due to the efforts of Defendant Cassim and two individuals who worked at a CD manufacturing plant in North Carolina, which was under contract to manufacture musical compact discs for Universal Music Group. One of those individuals, Bennie Glover, obtained pre-release CDs that had been stolen from the plant by co-workers. Using software that Defendant Cassim remotely installed on Glover's computer, Glover would "rip" the pre-release CDs and transfer the infringing copies directly to Cassim for further distribution on the Internet.

The evidence will also show that defendant Matthew Chow, using the alias "RL" was an RNS ripper from 2001 through at least January 2007. Chow bought CDs when they were released on Tuesdays, ripped them and uploaded them for further distribution on the Internet.

The incentive for participation in RNS, like other release groups, was both personal financial gain and pride. By belonging to RNS, its members gained access to enormous troves of other infringing content stored on affiliated private computer servers, sometimes referred to as

"sites" around the globe.  Members of RNS had access to private computer servers containing infringing copies of movies that were still playing in cinemas, software programs that cost thousands of dollars, and popular video game titles.  They could and did download this content without paying a cent to copyright owners.  Evidence to be introduced at trial will show defendant Chow searching for infringing copies of movies, television programs and popular music.  Similarly, an examination of defendant Cassim's computer revealed infringing copies of music CDs distributed by both RNS and other release groups.

RNS was extremely security conscious, and took a number of precautions to avoid infiltration by law enforcement and copyright owners.  Among other things, after a number of high-profile law enforcement actions against other warez groups in the early 2000s, RNS' members began encrypting their chat communications.  When RNS members learned that one of the servers affiliated with RNS had been seized by European law enforcement, RNS members, at Defendant Cassim's urging, stopped using the RNS name, and began dismantling the group.

## IV.     PERTINENT LAW

### A.     CONSPIRACY

#### 1.     Elements

To prove a conspiracy to commit criminal copyright infringement in violation of 18 U.S.C. § 371, the government must prove beyond a reasonable doubt that: (1) the defendant and at least one other person entered an agreement to pursue an unlawful objective; (2) the defendant knew of the unlawful purpose of the agreement and joined it voluntarily; and (3) one of the conspirators during the existence of the conspiracy knowingly committed at least one overt act in furtherance of some object or purpose of the conspiracy.  *See, e.g., United States v. Floyd,*

343 F.3d 363, 370 (5th Cir.2003).  Here the indictment alleges that the unlawful objective of the conspiracy at the heart of RNS was the willful infringement of copyrights for private financial gain through (1) the reproduction and distribution of ten or more copies of one or more copyrighted works within a 180 day period with a total retail value greater than $2,500 and (2) the distribution a copyrighted work being prepared for commercial distribution by making it available on a computer network accessible to members of the public with knowledge it was intended for commercial distribution, in violation of 17 U.S.C. §506(a)(1)(A) and  (a)(1)(C).

### 2. __Willfulness__

The government must prove that an objective of the conspiracy was willful copyright infringement.  In the context of proving a substantive count of criminal copyright infringement, courts have interpreted "willfulness" to require the government to prove that the defendant acted voluntarily in violation of a known legal duty.  *See, e.g., United States v. Cross*, 816 F.2d 297, 300-01 (7th Cir. 1987) (approving without comment a jury instruction in a criminal copyright case that an act is willful, when it is committed "voluntarily, with knowledge that it was prohibited by law, and with the purpose of violating the law, and not by mistake, accident or in good faith.").  The government will prove that the defendants voluntarily participated in RNS, knowing that an objective of the conspiracy was willful copyright infringement.

### 3. __Private Financial Gain__

Defendants are charged with conspiring to commit criminal copyright infringement in violation of Title 17, United States Code, Section 506(a)(1)(A), which prohibits willful copyright infringement for purposes of "commercial advantage or private financial gain."  The term "financial gain" is defined expansively in the Copyright Act, and is not limited to a monetary

profit motive. Rather, it is defined as "including receipt, or expectation of receipt, of anything of value, including the receipt of other copyrighted works." 17 U.S.C. § 101. Thus, the government need only prove that an objective of the conspiracy was the receipt or expectation of receipt anything of value, which can include other copyrighted works, such as music and movies.

### 4. Proof of Copyright Infringement Not Required

Because the sole charge in the indictment is conspiracy, the government need not prove the substantive crime of criminal copyright infringement. The success of the conspiracy is immaterial to whether the defendants committed the crime of conspiracy. *See, e.g., United States v. Tucker*, 376 F.2d 236, 238 (4th Cir. 2004) ("Proof of a conspiracy does not require that the object of the conspiracy was achieved or could have been achieved, only that the parties agreed to achieve it."). The charged crime of conspiracy is distinct from the actual substantive offense of criminal copyright infringement, because the conspiracy punishes the agreement itself, and not the actual commission of the agreed upon objective. *See United States v. Bayer*, 331 U.S. 532, 542 (1947); *see also Garrett v. United States*, 471 U.S. 773, 778 (1985). This distinction is important because a particular defense that may be available to a substantive charge may not be available as a defense to a conspiracy charge.

Neither proof of the formality of copyright registration nor introduction into evidence of copyrighted works deposited with the Library of Congress are elements of the crime of conspiracy or the substantive crime of copyright infringement. Defendant Cassim's objection to Exhibit 31 fails to cite a single case holding that the modern Copyright Act requires introduction into evidence of deposit copies in a criminal prosecution. This is because no court in the thirty-one-year history of the modern Copyright Act has arrived at that conclusion.

**V.  EVIDENTIARY ISSUES**

Defendants have made several objections to evidence, which are addressed below:

**A.        CO-CONSPIRATORS' STATEMENTS**

The government intends to introduce into evidence inculpatory statements of the defendants and their co-conspirators in RNS' private chat room, which are memorialized in a chat session log marked as Exhibit 2.  A co-conspirator will authenticate the log and will establish that the chat took place during and in furtherance of the conspiracy.

Defendants object that the statements contained in Exhibit 2 are inadmissible under Federal Rule of Evidence 801(d)(2)(E) because the statements were not made during the course of and in furtherance of the conspiracy[1].  Defendant Chow further argued that the statements amount to testimonial hearsay, which, if admitted, would violate the Confrontation Clause of the Sixth Amendment as clarified in *United States v Crawford*, 541 U.S. 36 (2004).

Defendants' objection should be overruled.  First, the RNS conspiracy was ongoing when the statements in Government Exhibit 2 were made.  A conspiracy is completed only when its object is achieved and there is no evidence it is continuing.  *United States v. DeVaugn*, 579 F.2d 225 (2d Cir. 1978).  To the contrary, the objective of the conspiracy to distribute infringing copyrighted works and gain access to other infringing works was ongoing during the chat session in Exhibit 2.  Furthermore, the government will introduce evidence that this chat room was the private chat room used to discuss RNS business.

---

[1]   Defendant Chow does not appear to dispute that the conspiracy existed and that the statements in Exhibit 2 were made by a co-conspirator, both of which are also required in order for co-conspirators statements to be admissible under Federal Rule of Evidence 801(d)(2)(E).  *Bourjaily v. United States*, 483 U.S. 171 (1987); *United States v. Elashyi*, 554 F.3d 480 (5th Cir. 2008).

8

Second, the communications recorded in Exhibit 2 were in furtherance of the RNS conspiracy's objectives. Co-conspirators' statements are in furtherance of the conspiracy when they are "intended to promote the conspiratorial objectives." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quoting *United States v. Reyes*, 798 F.3d 380, 384 (10th Cir. 1986)); *see also United States v. Cornett*, 195 F.3d 776, 782 (5th Cir. 1999). They are also in furtherance of the conspiracy when they serve to inform co-conspirators of the status of the conspiracy. *Townley*, 472 F.3d at 1273 (internal quotations and citations omitted). The Fifth Circuit has "consistently held that the 'in furtherance' requirement is not to be construed too strictly lest the purpose of the exception be defeated." *Cornett* at 782-83.

The government will establish through the testimony of a co-conspirator that the communications in Exhibit 2 were in furtherance of the RNS conspiracy's objectives to distribute and reproduce infringing copyrighted works. Indeed, this purpose is self-evident from a cursory review of the chat log. A primary purpose of the conspiracy with which defendants are charged was the unlawful reproduction and distribution of copyrighted works. *See* Superseding Indictment, ¶ 2. Exhibit 2 is filled with planning discussions of RNS' final distributions of infringing works. *See* Ex. 2, 65. This directly promoted the conspiratorial objectives.

Government Exhibit 2 also contains discussions of how to conceal the conspiracy and avoid detection by law enforcement, which the Fifth Circuit has held are types of discussions that are "in furtherance" of the conspiracy. *See United States v. Elashyi*, 554 F.3d 480, 502-03 (5th Cir. 2008) (co-conspirator statements made to government officials requesting removal of export restrictions on defendants so defendants could continue operating conspiracy to illegally export goods were "in furtherance" because they were designed to conceal the conspiracy itself and

9

were properly admitted); *United States v. Phillips*, 219 F.3d 505, 418-19 (5th Cir. 2000) (co-conspirator statements designed to exact sympathy so the conspiracy could remain secret were "in furtherance" and properly admitted); *United States v. Payne*, 437 F.3d 540 (6th Cir. 2006) *cert. denied*, 126 S. Ct. 2909 (2006).

Defendant Chow bases his objection, in part, on *Cornett*, the facts of which bear no resemblance to the facts here. 195 F.3d 776. In *Cornett*, the Fifth Circuit excluded co-conspirator statements from an "ambiguous audiotape" that were "almost unintelligible" that presented a conversation, almost all of which was wholly unrelated to the activities of the conspiracy. *Id.* at 786. In Defendant Chow's case, the topic of conversation in Government Exhibit 2 is almost exclusively conspiracy-related in nature, including discussion of the recent seizure of one of the group's computer servers, the distribution of infringing copies of music and the avoidance of detection by law enforcement.

This court need not reach defendants' third basis for their objections, *i.e.*, that the statements in Exhibit 2 are testimonial hearsay that, if admitted, would violate defendants' Sixth Amendment Confrontation Clause rights. Statements in furtherance of a conspiracy are not testimonial. *Crawford*, 541 U.S. at 55. "[A]s an example of 'statements that by their nature were not testimonial,' the Supreme Court [in *Crawford*] specifically listed 'statements in furtherance of a conspiracy.'" *Summers v. Dretke*, 431 F.3d 861, 877 (5th Cir. 2005).

## B.     DEFENDANTS' PRIOR STATEMENTS AGAINST INTEREST

Both Defendants were interviewed by FBI agents. During the interview of Defendant Cassim, which took place during the execution of a search warrant of his residence in December 2007, Cassim acknowledged certain identifying information about himself, including his cell

phone number and email addresses, and acknowledged ownership of certain computer equipment seized from his residence before he invoked his right to counsel. After he invoked his right to counsel, the interviewing agents terminated the interview.

FBI agents interviewed Defendant Chow at his residence in March 2009, during which he admitted to participating in the RNS group over a period of approximately six years. Chow further admitted to purchasing music CDs, copying them and distributing the music to other members of RNS on the Internet. Chow also admitted to re-designing the text information file that accompanied music distributed by RNS. In both his written (Government Exhibit 32) and oral statements to the FBI agents, Chow identified "Kali" as a leader of RNS.

### 1.    The Government May Elicit Both Defendants' Prior Statements

The government will elicit testimony regarding statements by defendants. A statement is not hearsay if the statement is offered against a party and is the party's own statement in either an individual or representative capacity. Fed. R. Evid. 801(d)(2)(A).

### 2.    Defendant Cassim's Bruton Objection

Defendant Cassim objects that introduction of Exhibit 32, which is Defendant Chow's written statement identifying "Kali" as a leader of RNS, would violate Cassim's Sixth Amendment right to confrontation if Chow did not testify.

To address Defendant Cassim's *Bruton* objection, the government proposes having the agent who took Chow's statement read from a redacted version of the statement, which eliminates the reference to "Kali." The government has provided a copy of the redacted version to counsel for both defendants, and both have agreed to the language of the redacted statement. The government will mark the redacted statement for identification, but will not introduce it into

evidence.  Should Defendant Chow later testify, the government may seek to admit the unredacted Exhibit 32 into evidence.  In that circumstance, the Government will seek an instruction from the Court that the FBI agent who testified regarding Defendant Chow's statement had been instructed not to refer to "Kali."

This procedure is consistent with Fifth Circuit and Supreme Court caselaw.  In *United States v. Leal*, 74 F.3d 600, 605-06 (5th Cir. 1996), Fifth Circuit rejected a *Bruton* challenge to the admission of a codefendant's statements where all references to the other codefendants had been redacted from the admissions.  The court there recognized that "a *Bruton* problem arises only when the statements clearly implicate the codefendant. . . . Here, [the co-conspirator's] confession did not refer to Leal by name.  There was no direct implication, and the limiting instruction was adequate to prevent prejudice." *Id.* (internal citations omitted).

## C.    INEXTRICABLY INTERTWINED EVIDENCE

The government intends to introduce evidence of copies of infringing music distributed by groups other than RNS found on Defendant Cassim's personal computer.  The evidence of the other sound recordings illegally copied by defendant is admissible as being intrinsic to the purpose of the RNS conspiracy to obtain infringing copies of copyrighted works.  *See, e.g., United States v. Watkins*, 591 F.3d 780, 784 (5th Cir. 2009) (other acts are intrinsic to the charged crime "when the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode'. . . .").   The evidence relates to the purpose of the RNS conspiracy: By distributing infringing music to other warez groups, Cassim and other defendants were able to download infringing copies of music illegally reproduced and distributed by other release groups.

Second, there is sufficient evidence for the jury to find that defendant participated in the other incidents.  *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("similar act evidence is relevant only if the jury can reasonably conclude that the act occurred and that the defendant was the actor").  Witnesses will testify that they found the music files with other piracy group tags on defendant's personal computer.  The testimony of those witnesses satisfies the minimal reliability threshold.

**D.      EVIDENCE OF DEFENDANT CASSIM'S OTHER ACTS**

The government and Defendant Cassim have filed opposing motions *in limine* regarding the admissibility of Cassim's references to marijuana use in email communications with members of RNS about RNS' activities and the fact that marijuana leaves and paraphernalia were seized from Cassim's residence.

**E.      USE OF COPYRIGHT REGISTRATIONS**

The government will seek to admit certified copies of certain copyright registrations obtained directly from the United States Copyright Office, marked as Exhibit 31, during its case in chief.  The majority of defendant Cassim's objections to these records is addressed by the simple fact that the records to be admitted are certified public records.  As domestic public records under seal, these certificates are self-authenticating and are non-hearsay.  *See* Fed. R. Evid. 902(1).  Although the government is not required to introduce certificates of copyright registration to prove a conspiracy charge, or even a substantive charge of copyright infringement, the certificate is prima facie evidence of the validity of the fact that the copyrights exist.  17 U.S.C. § 410(c); *See, e.g., United States v. Taxe*, 540 F.2d 961, 966 (9th Cir. 1976).

Contrary to Defendant Cassim's objection to Exhibit 31, the government is not required

to acquire from the Library of Congress each copyrighted work infringed by RNS members to prove a conspiracy charge, and no case has ever imposed such a requirement on the government, even in cases involving substantive charges of criminal copyright infringement. The testimony by co-conspirator members of RNS that they obtained popular music CDs, directly copied them and then distributed those copies over the Internet is sufficient to establish the infringement element of a substantive criminal copyright infringement charge.

That is in part because proof of registration of a copyright is not a requirement for criminal prosecution of a substantive charge of criminal copyright infringement, let alone a conspiracy charge. Since the Copyright Act was amended in 1978, 17 U.S.C. § 102 has provided that a copyright exists as soon as an original work of authorship is fixed in a tangible medium of expression. While registration has been a requirement for maintaining a civil cause of action, it has not been found to be a requirement for criminal enforcement of copyright infringement. In 1988, the Senate Judiciary Committee expressly observed that "registration is not a statutory precondition for criminal enforcement of copyright." S. Rep. No. 100-352 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3706, 3743s. This was reiterated in the 2008 Prioritizing Resources and Organization for Intellectual Property Act, Pub. L. No. 110-403, § 101, 122 Stat. 4257 (2008), which again confirmed that copyright registrations are required only in civil infringement suits.

The line of cases erroneously relied upon by Cassim address civil copyright infringement actions where the copyright holders attempted to prove circumstantially that elements of the defendant's non-identical work had been copied from the plaintiff's copyrighted work. That is a far cry from the *direct* evidence of identical copying being offered in this case. The government will present testimony of co-conspirators that they and other members of RNS directly copied

popular phonorecords and then distributed them on the Internet.  In fact, this was the very

purpose of the RNS conspiracy.  While the very existence of the phonorecords is proof that they

were copyrighted, the government is also introducing a select number of copyright registrations

and the testimony of a member of the Recording Industry Association of America.

Defendant Cassim's objections to proof of ownership of copyrighted works is similarly

unavailing in a conspiracy case.  While proof of ownership of a copyright is a requirement to

establish standing to sue in a civil copyright infringement action, ownership is of no moment to a

criminal action.  To prove a substantive criminal copyright infringement charge, the government

need only prove the defendants willfully distributed or reproduced copyrighted works without

authorization, and the government will prove that was the object of the RNS conspiracy.

## F.    REFERENCES TO CIVIL REMEDIES

The government has objected in its Motion *in Limine* No. 2 to any reference, argument or

suggestion that this matter is better handled as a civil matter than a criminal matter.  The

government hereby incorporates the arguments raised in that motion by reference.

## G.    AUTHENTICATION OF DOCUMENTS

The government served the majority of its exhibits and its exhibit list on the defendants'

counsel on December 8, 2010.  Because neither defendant raised any objections to the

authenticity of the exhibits provided within five days of service, their authenticity is admitted

pursuant to Criminal Local Rule 55.2 and paragraph 12 of this Court's procedures.

# VI.    CONCLUSION

The government reserves the right and requests leave to file further memoranda as

additional issues arise at trial.

Respectfully submitted,

JOSÉ ANGEL MORENO
United States Attorney

By:      /s/   Tyler G. Newby
         Tyler G. Newby
         Attorney for United States
         U.S. Department of Justice
         Computer Crime and Intellectual Property Section
         1301 New York Avenue, Suite 600
         Washington, DC 20530

         Tara Swaminatha
         Trial Attorney
         U.S. Department of Justice
         Computer Crime and Intellectual Property Section

         Jay V. Prabhu
         Assistant United States Attorney
         Eastern District of Virginia

         S. Mark McIntyre
         Assistant United States Attorney
         (713)-567-9572

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of March, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF, which will then send a notification of such filing (NEF) for defendants as listed below.

By:    <u>  /s/   Tyler G. Newby     </u>
Tyler G. Newby
Attorney for United States
U.S. Department of Justice
Computer Crime and Intellectual Property Section
1301 New York Avenue, Suite 600
Washington, DC 20530


Attorney for defendant ADIL R. CASSIM:

Domingo J. Rivera, Esq.
11551 Nuckols Road, Suite N
Glen Allen, VA 23059
Ph: (804) 332-6585
Fx: (866) 651-2004
Email: attorneyrivera@gmail.com

Attorneys for defendant MATTHEW D. CHOW:

Terry W. Yates, Esq.
Terry W. Yates & Associates
6750 West Loop South, Suite 845
Bellaire, TX 77401-4112
Ph: (713) 861-3100
Fx: (713) 621-0000
Email: yateslawfirm@hotmail.com

George D. Murphy, Jr., Esq.
Niels Esperson Building
808 Travis, 24th Floor
Houston, Texas 77002
Ph: (713) 658-1960
Fx: (713) 650-1602
Email: george@georgemurphylawyer.com